UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ETHAN P. AINSWORTH

CIVIL ACTION

VERSUS

NO. 21-736-JWD-EWD

UNION PACIFIC RAILROAD
COMPANY, ET AL.

### RULING AND ORDER

This matter comes before the Court on the *Joint Motion to Transfer Venue* (Doc. 19) ("*Motion to Transfer*") filed by Defendants Union Pacific Railroad Company ("Union Pacific"), Ralph Roland ("Roland"), and John Chop Trucking LLC ("John Chop") (collectively, "Defendants"). Plaintiff Ethan P. Ainsworth ("Plaintiff") opposes the *Motion*. (Doc. 29.) Union Pacific has filed a reply. (Doc. 34.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the *Motion to Transfer* is denied. However, pursuant to 28 U.S.C. § 1406(a), this case shall be transferred *sua sponte* to the United States District Court for the Western District of Louisiana, Alexandria Division.

**I.   Relevant Factual Background**

This case arises out of a collision between a train and an 18-wheeler vehicle. (Doc. 1 at 2, ¶ VI.) On or about October 10, 2021, at approximately 3:40 p.m., the locomotive upon which Plaintiff was working collided with an 18-wheeler vehicle in or around Cheneyville, Louisiana. (*Id.*) At the time of the collision, Plaintiff was operating the locomotive—that is, the train engine attached to the railway train—as an engineer employed by Union Pacific, the owner of the train. (*Id.* at 2–3, ¶¶ V., VI., VII.) The 18-wheeler that collided with said train was owned by John Chop

and operated by John Chop's employee, Roland. (*Id*. at 3, ¶ VI.) As the train was traveling north, "Roland negligently pulled the 18-wheeler onto the railroad crossing, causing the train [Plaintiff] was operating to strike the 18-wheeler." (*Id*. at 3, ¶ VII.) "At the time of the collision, [Plaintiff]'s engineer seat failed to lock in the forward position." (*Id.*) "As a result of the collision and Union Pacific's defective seat, [Plaintiff] sustained serious injuries to his neck, back, right shoulder, and other parts of his body." (*Id.*)

Thereafter, on December 30, 2021, Plaintiff filed suit against Defendants. Plaintiff's claims against Union Pacific arise under the provisions of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.* to recover damages for the personal injuries he sustained while employed by Union Pacific. (*Id*. at 1–2, ¶ II.) Plaintiff's claims against John Chop and Roland arise under both federal and Louisiana law. (*Id.* at 2, ¶ II.)

According to the Complaint, Union Pacific is "a foreign corporation organized under the laws of and domiciled in the State of Delaware, with its principal place of business located in the State of Nebraska, and whose principal place of business within the State of Louisiana is in the Parish of East Baton Rouge, and which is authorized to do and doing business in the State of Louisiana[.]" (*Id.* at 1, ¶ I.) In addition, the Complaint provides that John Chop is "a Louisiana Limited Liability Company, domiciled in the Town of Lecompte, Parish of Rapides, State of Louisiana, authorized to do and doing business in the State of Louisiana[,]" and that Roland is a natural person domiciled in the Village of Plaucheville, Parish of Avoyelles, State of Louisiana. (*Id.*)

## II.     Parties' Arguments

In sum, Defendants ask the Court to transfer this matter to the Western District of Louisiana, Alexandria Division pursuant to 28 U.S.C. § 1404(a) because they submit that the

Western District of Louisiana would be a more proper and convenient forum than the Middle District of Louisiana. (Doc. 19 at 1.) To support this contention, they first point out that the accident occurred in the Western District and that Plaintiff, his treating medical providers, Roland, John Chop, all first responders, and other non-party witnesses identified thus far reside within the Western District of Louisiana. (*Id.*; *see id.* at 5 (citing the Complaint as showing that Plaintiff resides in LaSalle Parish, which is located in the Western District).) The first responders who presented to the accident scene are from the Cheneyville Police Department and Acadian Ambulance's Central Louisiana branch, both of which are also located in the Western District. (*Id.* at 5.) Further, Defendants claim that apart from Roland, who only lives eighty miles from the Middle District, every other party witness, non-party fact witness, and first responder, as well as Plaintiff's medical providers, are all located more than 100 miles from this Court. (*Id.* at 6.)

In addition, Defendants aver that this case should be transferred under 28 U.S.C. § 1404 because the venue transfer factors—that is, the "private and public interest" factors—taken in totality weigh in favor of transferring this case to the Western District. (*Id.* at 7, 11.) As discussed more fully below, because the Court finds that venue is improper in the Middle District, a full recitation of Defendants' arguments regarding § 1404 transfer for convenience is not necessary here.

Plaintiff opposes Defendants' *Motion to Transfer*. (Doc. 29.) First, in arguing transfer to the Western District is not proper, Plaintiff claims that "there is a strong presumption in favor of the plaintiff's choice of forum when an admittedly proper venue is selected." (Doc. 29-1 at 1 (citing *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672 (5th Cir. 2003)).) Further, according to Plaintiff, to overcome this presumption, the defendants seeking transfer to another venue must "clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest

3

of justice.' " (*Id*. (citing *In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008) (citations omitted)).) Plaintiff contends that Defendants have not met their burden, and thus, this case should remain where filed, in the Middle District of Louisiana. (*Id*. at 2.)

Like Defendants, Plaintiff also argues that the public and private interest factors control the "convenience" inquiry for determining whether transfer is appropriate. (*Id.* at 3.) Again, because the Court finds that venue is improper in the Middle District, a full recitation of Plaintiff's arguments regarding transfer for convenience under 28 U.S.C. § 1404 is not necessary here. Finally, Plaintiff also generally asserts that Union Pacific and John Chop have regular and systematic contacts in parishes situated in the Middle District. (*Id*. at 8.) For these reasons, Plaintiff asks the Court to deny Defendants' *Motion to Transfer*. (*Id*.)

Union Pacific filed a reply to Plaintiff's opposition, re-urging Defendants' contention that their request for transfer of this matter to the Western District should be granted. (Doc. 34.) According to Union Pacific, Plaintiff improperly argues that his own convenience should weigh heavier in the Court's balance of the private and public interest factors before it. (*Id*. at 2.) The remainder of Union Pacific's reply continues to focus on the public and private interest factors, which Union Pacific argues clearly weigh in favor of transfer to the Western District under 28 U.S.C. § 1404. Again, because analysis of 28 U.S.C. § 1404 and its accompanying factors is unnecessary here, the Court will not repeat Union Pacific's detailed arguments on this point.

### III. Applicable Law and Analysis

"Upon objection to venue, the burden is on the plaintiff to establish that venue is proper, but the Court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Walters v. T.H. Hill Assocs., Inc.*, No. 12-723, 2013 WL 5375488, at *1 (M.D. La. Sept. 19, 2013) (citing *Ginter ex rel. Ballard v. Belcher, Predergast & Laporte*, 536 F.3d 439,

4

448–49 (5th Cir. 2008)). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. W. Dist. Tex.*, 571 U.S. 49, 56 (2013). Put another way, 28 U.S.C. § 1406(a) allows a court to dismiss or transfer an action only if that action has been originally brought in an improper venue.

In contrast, transfer under 28 U.S.C. § 1404(a) is only authorized if the movant establishes that: "(1) venue is proper in the transferor district; (2) venue is proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of witnesses, and the interests of justice." *O'Quin v. Fin. Servs. Online, Inc.*, No. 18-36, 2018 WL 5316360, at *10 (M.D. La. Oct. 26, 2018) (deGravelles, J.) (citations omitted); *see* 14D Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 3827 (4th ed. 2022) (explaining that Section 1404(a) "refers to a civil action in which venue is properly laid in the district where the case was filed[,]" whereas "Section 1406(a) pertains to transfer of a case laying venue in the 'wrong district.' "). If it is established that venue is proper in both the transferor district and the transferee district, then the movant must lastly show "that the transferee venue is clearly more convenient." *White Hat v. Landry*, 475 F. Supp. 3d 532, 553 (M.D. La. 2020) (deGravelles, J.) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)). To determine "whether a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice[,]" courts within the Fifth Circuit apply the public and private interest factors established by the Supreme Court in *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501 (1947). *Volkswagen*, 545 F.3d at 315 (citation omitted).

In the case at hand, Defendants seek transfer under 28 U.S.C. § 1404(a) only. However, as noted above, transfer under Section 1404(a) is only authorized if venue is proper in the forum

where the case was originally brought—here, the Middle District. For reasons that follow, the Court finds that the Middle District is not a proper venue for this action.

The general venue statute, 28 U.S.C. § 1391, guides the Court in determining whether venue is proper. Under that provision, venue is proper in either:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)–(3).

Because the accident at issue occurred in Cheneyville, Louisiana, which is located in the Western District, venue is not proper in the Middle District under the "transactional venue" provision, 28 U.S.C. § 1391(b)(2). (*See* Doc. 1 at 2, ¶ VI.) Contrary to Plaintiff's assertions, the Court also finds that venue is not proper in the Middle District under the "residential venue" provision, 28 U.S.C. § 1391(b)(1).

Plaintiff argues that venue is proper here because the Court has personal jurisdiction over Union Pacific and John Chop, making them residents of the Middle District under the venue provisions. More specifically, Plaintiff alleges that venue is proper in the Middle District "pursuant to 28 USC § 1391(c), as Defendant Union Pacific's principal place of business within the State of Louisiana is in the Parish of East Baton Rouge and Defendant John Chop Trucking is organized under the laws of the State of Louisiana and both have regular and systematic contacts in the Parishes situated in the Middle District of Louisiana." (Doc. 1 at 2, ¶ IV.; *see also* Doc. 29-1 at 3.) In his opposition, Plaintiff further states that Union Pacific has "regular and systematic contacts in the Parishes situated in the Middle District. . . ." because "Union Pacific has five branch locations

6

in the Middle District—specifically, in Maringouin, Livonia, Port Allen, Donaldsonville, and Addis." (Doc. 29-1 at 8.) As for John Chop, Plaintiff states that, "although John Chop Trucking is based in the Western District, it has regular and systematic contacts in the Middle District." (*Id.*) Plaintiff does not elaborate further on what exact contacts John Chop has in the Middle District, let alone explain how they are "regular and systematic."

Section 1391(c) defines "residency" for purposes of venue. That provision reads in pertinent part:

> (1) a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled;
>
> (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be *deemed to reside*, if a defendant, in any *judicial district* in which such defendant is subject to the court's *personal jurisdiction* with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business; and

28 U.S.C. § 1391(c)(1)–(2) (emphasis added).

Hence, by alleging venue is proper pursuant to 28 U.S.C. § 1391(c), Plaintiff is essentially claiming that venue is proper under the "residential venue" provision, 28 U.S.C. § 1391(b)(1), because both Union Pacific and John Chop are subject to the Court's personal jurisdiction in the Middle District. As stated above, the Court disagrees.

In states with multiple judicial districts like Louisiana, if a corporate defendant is "subject to personal jurisdiction" in the state "at the time [the] action [was] commenced," then the defendant "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State[.]" 28 U.S.C. § 1391(d). In a diversity action, a federal district court may exercise personal jurisdiction over a non-resident if: (1) the state's long-arm statute permits an exercise of jurisdiction over that defendant; and (2)

7

an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). As for the first element, pursuant to La. R.S. § 13:3201(B), Louisiana's long-arm statute, courts are permitted to exercise personal jurisdiction over non-residents consistent with the Louisiana State Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *A & L Energy, Inc. v. Pegasus Grp.*, 791 So. 2d 1266, 1270 (La. 2001). As such, only a federal due process analysis is necessary to determine whether personal jurisdiction may be exercised over the defendant.

Generally, a court's exercise of personal jurisdiction over a non-resident defendant comports with due process when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (citing, *inter alia*, *International Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). This Court has frequently elaborated on the "minimum contacts" requirement:

> The "minimum contacts" prong is satisfied when a defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus, invoking the benefits and protections of its laws." In other words, the defendant's connection with the forum state should be such that "he should reasonably anticipate being haled into court there." The " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' "
>
> "The 'minimum contacts' prong is further subdivided into contacts that give rise to *specific jurisdiction* and those that give rise to *general jurisdiction*." "Where a defendant has '*continuous and systematic* general business contacts' with the forum state, the court may exercise 'general' jurisdiction over any action brought against that defendant." However, "[w]here contacts are less pervasive, the court may still

exercise 'specific' jurisdiction in a suit arising out of or related to the defendant's contacts with the forum."

*Essex Energy, L.L.C. v. Willis*, No. 15-307, 2015 WL 8207468, at *3 (M.D. La. Dec. 7, 2015) (Dick, C.J.) (footnotes and internal citations omitted) (emphasis added).

In this case, there is clearly no specific jurisdiction over Defendants in the Middle District because the facts giving rise to this litigation—that is, the alleged incident and Plaintiff's resulting injuries—occurred in the Western District. Put another way, Plaintiff's suit does not arise out of or relate to Defendants' contacts with the Middle District of Louisiana. As a result, the Court's analysis is limited to the issue of general jurisdiction.

The Supreme Court has articulated the standard for general or "all-purpose" jurisdiction as follows: "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Further, as this Court has explained:

> Only a "limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, [571 U.S. at 137]. That "limited set" of affiliations includes the corporation's place of incorporation and its principle place of business. *Id.*
>
> *Daimler* made clear that it was *not* holding that "a corporation may be subject to general jurisdiction only where it is incorporated or has its principle place of business." *Id.* "We do not foreclose the possibility that in an *exceptional case*, a corporation's operations in a forum other than its formal place of incorporation or principle place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at [139 n.19] (internal citation omitted).

*O'Quin*, 2018 WL 5316360, at *7 (second emphasis added).

As for Union Pacific, Plaintiff alleges that this "foreign corporation [is] organized under the laws of and domiciled in the State of Delaware" and further alleges that Union Pacific's

9

"principal place of business [is] located in the State of Nebraska[.]" (Doc. 1 at 1, ¶ I.) However, Plaintiff additionally alleges that Union Pacific's "principal place of business *within the State of Louisiana* is in the Parish of East Baton Rouge[.]" (*Id.* (emphasis added).) The Court finds this legal conclusion insufficient to show that the Court may exercise general personal jurisdiction over Union Pacific in the Middle District for two reasons.

First, Plaintiff does not argue that Union Pacific's principal place of business is in East Baton Rouge Parish, but rather alleges that Union Pacific's "principal place of business *within the State of Louisiana* is in the Parish of East Baton Rouge[.]" (*Id.* (emphasis added).) Put another way, in making this allegation, Plaintiff seems to only take into account Union Pacific's activities in the state of Louisiana, not Union Pacific's business activities as a whole. Second, even if Plaintiff had alleged that Union Pacific has a principal place of business in both the state of Nebraska and East Baton Rouge Parish, that allegation too would be insufficient here to show Union Pacific's principal place of business is in the Middle District, because a corporation can only have one principal place of business. *See Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010) ("A corporation's 'nerve center,' usually its main headquarters, is a *single place*.") (emphasis added).

Next, the Court must examine whether Plaintiff has demonstrated that either Union Pacific's or John Chop's contacts in the Middle District are so "continuous and systematic" as to render them essentially "at home" in the Middle District. *Daimler*, 571 U.S. at 127 (citation omitted); *see Firefighters' Ret. Sys. v. Royal Bank of Scotland PLC*, No. 15-482, 2016 WL 1254366, at *3 (M.D. La. Mar. 29, 2016) (Dick, C.J.) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (alteration in original) (explaining that "[i]t is incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."). As for John Chop, Plaintiff provides virtually no facts to explain how John Chop's

10

contacts with the Middle District are so "continuous and systematic" that they essentially render John Chop at home in that district. *Essex Energy*, 2015 WL 8207468, at *3 (citation omitted). Accordingly, the Court finds that Plaintiff failed to show the exercise of general personal jurisdiction over John Chop in the Middle District is proper.

As for Union Pacific, Plaintiff argues that Union Pacific has "regular and systematic contacts in the Parishes situated in the Middle District. . . ." because "Union Pacific has five branch locations in the Middle District—specifically, in Maringouin, Livonia, Port Allen, Donaldsonville, and Addis." (Doc. 29-1 at 8.) In addition, as Defendants point out, Union Pacific's registered agent for service of process is located in Baton Rouge. (Doc. 19 at 5.) The Court finds these contacts insufficient to meet the "exceptional case" that would justify imposing general jurisdiction here. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 235 (5th Cir. 2016); *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 242 (5th Cir. 2022).

Two cases in particular, *Mercury Rents, Inc. v. Crenshaw Enters., LLC*, No. 16-1741, 2017 WL 2380642 (W.D. La. Apr. 13, 2017) and *Long v. Patton Hospitality Management*, No. 15-2213, 2016 WL 760780 (E.D. La. Feb. 26, 2016), illustrate the high standard set by the Supreme Court for imposing general jurisdiction on a defendant based solely on their contacts with the forum. The Courts finds these cases instructive on the issue at hand.

In *Mercury Rents,* the court found the allegations of the defendant's significant contacts with Louisiana insufficient to support general jurisdiction. 2017 WL 2380642, at *6. In that case, the defendant's alleged contacts included: maintaining multiple locations; maintaining at least three employees, including a supervisor; transacting business with various Louisiana companies and customers; soliciting business from Louisiana customers through its website; registering for business in Louisiana and maintaining a registered agent for service in Louisiana; registering its

11

trade name with the Louisiana Secretary of State; paying Louisiana state taxes; and regularly attending a trade show held biannually in Louisiana. *Id.* at *5. The court held that these contacts were not so "continuous and systematic" as to render the defendant essentially "at home" in Louisiana. *Id.* at *6 (concluding that the evidence established, at best, that the defendant engaged in significant business with Louisiana, but that its overall affiliations with Louisiana fell short of the extremely high bar required for general jurisdiction).

Similarly, in *Long*, the court found the defendant's contacts with Louisiana insufficient to support general jurisdiction. 2016 WL 760780, at *5–6. There, the defendant's contacts included: registering to do business in the state; maintaining a registered agent for service in the state; managing a property in the state; paying state and property taxes; and employing nine individuals in the state. *Id.* at *4. The court found that these activities did not render the defendant essentially "at home" in Louisiana. *Id.* at *6. Importantly, the court noted that Louisiana was just one of the many states in which the defendant managed properties and stated that the plaintiff failed to establish that the defendant was any more active in Louisiana than it was in any other state in which it operated. *Id.* at *5. Thus, the court concluded that the defendant's activities did not even "come close to rising to the level of the principal place of business, the quintessential paradigm for general jurisdiction." *Id.*

Union Pacific's contacts with the Middle District, as set forth above, are no more substantial than the contacts considered in *Mercury Rents* and *Long*. As such, the Court finds that Union Pacific's contacts with the Middle District are not so continuous and systematic as to render Union Pacific at home in the Middle District. *See Mercury Rents*, 2017 WL 2380642, at *5; *Long*, 2016 WL 760780, at *5–6. Consequently, the Court finds that Union Pacific's contacts with the Middle District—as represented by Plaintiff—are insufficient to establish general jurisdiction over

Union Pacific if this district were a separate state. Because neither Union Pacific nor John Chop is subject to personal jurisdiction in this district, they are likewise not deemed to "reside" in the Middle District pursuant to 28 U.S.C. § 1391(c). Therefore, the Court finds that the Middle District of Louisiana is not a proper venue under 28 U.S.C. § 1391(b)(1).[1]

Because venue is improper in the Middle District, the Court must now decide whether to dismiss or transfer this case in accordance with 28 U.S.C. § 1406(a). Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Under the transfer statute, a district court may transfer a case upon a motion or sua sponte. 28 U.S.C. § 1404 and § 1406." *Latino v. Dillard Dep't Stores, Inc.*, No. 19-184, 2019 WL 3752969, at *1 (M.D. La. Aug. 8, 2019) (Jackson, J.) (quoting *Caldwell v. Palmetto State Savings Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987)). Before transferring a case, the Court must first determine whether the destination venue—here, the Western District—is a district in which the suit "might have been brought." *See Volkswagen*, 545 F.3d at 312.

In this case, the Western District is where the essential facts of the litigation took place. (*See* Doc. 1 at 2, ¶ VI. (the accident occurred in Cheneyville, Louisiana, which is located in the Western District).) Thus, the Court finds that the Western District is a proper venue under 28 U.S.C. § 1391(b)(2). Neither party has asked for dismissal of this case; instead, Defendants request a *transfer* of venue only. Therefore, in the interest of justice, the Court will in its discretion transfer

---

[1] The Court need not determine whether venue is proper under the "fallback" venue provision, 28 U.S.C. § 1391(b)(3), as "Section 1391(b)(3) applies *only* if there is no federal district that will satisfy either the residential venue or transaction venue provisions." 14D Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3806.1 (4th ed. 2022) ("It is not enough that the *forum district* does not satisfy residential or transaction venue. There must be no federal district *anywhere in the United States* that satisfies either Section 1391(b)(1) or Section 1391(b)(2).").

this case to the Western District of Louisiana, Alexandria Division, pursuant to 28 U.S.C. § 1406(a).

Finally, the Court notes that the parties focused heavily on the issue of transfer based on convenience under 28 U.S.C. § 1404(a) as well as the jurisprudential private and public interest factors used by courts in making that determination. However, given the Court's finding that the Middle District of Louisiana is not a proper venue under 28 U.S.C. § 1391, the only ground for transfer is under 28 U.S.C. § 1406(a). *See O'Quin*, 2018 WL 5316360, at *10 (explaining that to obtain transfer under § 1404(a), the movant must establish, *inter alia*, that venue is proper in the transferor district). Thus, the Court need not discuss Defendants' arguments for transfer under 28 U.S.C. § 1404(a).

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Joint Motion to Transfer Venue* (Doc. 19) filed by Defendants Union Pacific Railroad Company, Ralph Roland, and John Chop Trucking LLC is **DENIED**.

**IT IS FURTHER ORDERED** that pursuant to 28 U.S.C. § 1406(a), this case is hereby **TRANSFERRED** to the United States District Court for the Western District of Louisiana, Alexandria Division.

Signed in Baton Rouge, Louisiana, on <u>March 30, 2023</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**